UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAR 27 2026 PM 12:25
FILED - USDC - FLMD - TPA

VIOLA RUSSELL
P.O. Box 47134
District Heights, MD 20753
Plaintiff

v.

Case # 8:26-CV-854-JLB-TGW

LINDA B. MELLS
6212 21ST Street S
St. Petersburg, FL 33712
**Defendant,**
And

Reopened Related **Case #22-005075CI**

GV St. Pete, LLC
c/o Timothy R. Barnes – RA
13770 58th Street N, Suite 312
Clearwater, FL 33760
**Defendant.**

**Defendants are being sued jointly and severally.**

---

### COMPLAINT

---

Plaintiff, **Viola Russell**, appearing prose states the following:

## PARTIES, JURISDICTION, AND VENUE

Jurisdiction in the federal court is proper pursuant to **28 U.S.C. Section 1332** in that the *Plaintiff is a citizen of the State of Maryland* residing in Ft Washington, Maryland.

*Defendant Linda B. Mells* is a citizen of the State of Florida and resides in Pinellas County.

1


I.F.P.

*Defendant \GV St. Pete, Florida LLC, Reg (LL14000017686), known as*

*Grand Villa* operated an assisted living facility in Pinellas County, Florida.

Venue is proper in this Court because the events giving rise to this action

occurred in Pinellas County.

This Court has jurisdiction under the federal diversity statute because the amount

the controversy is over $75,000, excluding interest, fees, and costs.

---

## GENERAL FACTUAL ALLEGATIONS AND CLAIMS AGAINST DEFENDANT LINDA B. MELLS

---

## PLAINTIFF'S FIRST CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH EXPECTANCY OR INHERITANCE INTEREST

1. Plaintiff is the blood-related niece and namesake of Viola Cain, hereinafter referred to as Aunt Viola, so as not to confuse the Plaintiff with her aunt.

2. Aunt Viola had no children nor was she married at the time of her death, and her only natural heirs were her nieces, including the Plaintiff, who was the child of Aunt Viola's sister Bernice Johnson, who died in December 2016.

3. Bernice Johnson predeceased Aunt Viola, and after her sister's death, Aunt Viola expressed to the Plaintiff that it was her intent to bequeath her entire estate to the Plaintiff and the Plaintiff's daughter, Pariss Russell.

2

4. *Aunt Viola had always regarded the Plaintiff as her daughter, and the Plaintiff visited her every summer. Throughout her life, she had always promised and assured the Plaintiff that she would inherit the bulk of Aunt Viola's estate. The Plaintiff never wished to discuss the circumstances of her death, and in hindsight, she recognizes that this was a mistake.*

5. The Plaintiff relocated from Maryland to Aunt Viola's home in Florida for the sole purpose of assisting her aging aunt and providing her with daily support and companionship. Aunt Viola had been expressing concerns that individuals were stealing from her. **To make this move and care for her aunt, the Plaintiff left her life in Maryland, including her 36-year private detective license.**

6. Defendant Mells is a Registered Nurse, licensed under the State of Florida, and was hired by Aunt Viola in January of 2021 to provide nursing care for her, because Aunt Viola was suffering from slight dementia and was increasingly showing signs typical of someone with that condition and who was ninety-seven years old.

   a. Defendant Mells was referred to Aunt Viola after her previous caretaker, Pam Coleman. Plaintiff has no information about Defendant Mells' qualifications, experience, or history as a caregiver, or whether Defendant Mells provided any character references to Aunt Viola

before being hired. Furthermore, Plaintiff further doubts whether Aunt Viola would have required Defendant Mells to provide that information due to Aunt Viola's age and declining mental capacity.

7. Plaintiff is unaware of any previous relationship or interaction between Aunt Viola and Defendant Mells prior to Mells being hired as the caregiver.

8. **Plaintiff states upon information and belief that on February 12, 2021, and approximately one month after Aunt Viola hired the Defendant**, the Defendant, knowing Aunt Viola's declining mental acuity and awareness, orchestrated and with undue influence, threats and coercion, caused Aunt Viola to change her will and final testament making Defendant Mells the sole beneficiary of an estate valued at approximately one million dollars.

9. Plaintiff was unaware of the changes made to Aunt Viola's will, nor was she aware that the Defendant Mells was made the sole beneficiary of the estate until Aunt Viola's death, when her will was executed. *Plaintiff filed both a Caveat Order and a Petition, yet the court never addressed either filing. Despite these submitted pleadings, Plaintiff was never afforded a hearing or any meaningful opportunity to be heard before the case was closed. By disregarding the filings and declining to schedule a hearing,*

*the court denied Plaintiff procedural due process and terminated the*

*matter without ever considering the issues that were before it.*

10. During the time that the Defendant Mells was hired and until Aunt Viola's passing, acted as the power of attorney to manage Aunt Viola's sizeable estate and financial affairs, and with that changed Aunt Viola's insurance policies that had originally named the Plaintiff and her daughter as the only beneficiaries, making the Defendant the sole beneficiary of said insurance policies.

11. To the best of Plaintiff's knowledge, Defendant Mells possessed no expertise, experience, or qualifications to handle Aunt Viola's substantial financial affairs, which appears to be in conflict with the reason Defendant Mells was hired, which was as a health care provider. **The insurance company questioned the insurance policy matter, and Jack Fletcher at Bank of America also expressed concerns and requested to see Aunt Viola in person. When the Plaintiff attempted to bring her to the bank, she was trespassed from the Grand Villa and prevented from doing so.**

12. In an effort to further her unethical and potentially illegal conduct, as well as to hide her activities from Aunt Viola's family, the Defendant Mells, relying on her fraudulently attained power of attorney, prevented the family from visiting their aunt and, ultimately and without notice to the

5

family, had Aunt Viola placed into an assisted living facility and removed her from her home.

13. Upon information and belief, it is the Plaintiff's understanding that the cost for Aunt Viola residing and being cared for at the Grand Villa facility was allegedly $5000.00 per month and was being paid out of her bank account ( will be subpoenaed), which was controlled by Defendant Mells.

14. Upon information and belief, Plaintiff became aware that the Defendant Mells continued to pay herself as Aunt Viola's caregiver, although those services were presumably provided by the Grand Villa assisted living facility.

15. The Plaintiff was eventually able to locate Aunt Viola at the Grand Villa facility and found her without a bed to sleep on, provided only a leather reclining chair, which the Plaintiff reported to Deborah Cuatt. During the visit, Aunt Viola whispered to the Plaintiff, "Linda is trying to rape me," (steal from me), and asked the Plaintiff to bring her a few items from the house. While there, the Defendant Mells arrived and contacted law enforcement regarding the Plaintiff being at the residence. **The responding officer stated he needed to speak with Aunt Viola because Defendant Mells held a POA, while the Plaintiff held a legal POR. He called, and Aunt Viola informed Officer Daniel Puyana Ortiz on**

6

**11/13/21 at 17:16 that the Plaintiff had permission to be in the house and more. Those statements were incorporated into the official report, ID# 2021217216. The officer advised that the matter was civil in nature and left, and shortly thereafter, the Defendant proceeded to file charges, which served to divert attention (red herring) away from the underlying facts.** Aunt Viola continued to express to the Plaintiff that she wanted the Plaintiff and the Plaintiff's daughter to receive the entirety of her estate upon her death, and Aunt Viola gave no indication, nor did she inform the Plaintiff that she had executed a revised will making the Defendant Mells her sole beneficiary.

16. During Plaintiff's visit, Aunt Viola clearly stated that she was afraid of Defendant Mells and fearful that she would do something to harm her. Aunt Viola also indicated that she wanted to go back to her home, but Defendant Mells would not allow her to do so.

17. Aunt Viola kept repeating that Defendant Mells was attempting to move her own daughter and granddaughter into Aunt Viola's home, which had an inground swimming pool, was well-maintained, and was in an upscale neighborhood.

18. It had always been Aunt Viola's intent and desire for the Plaintiff to take over the property subject to any mortgages, and to keep the home in the family.

19. Aunt Viola died on July 22, 2022, and the plaintiff was not notified that her aunt's estate had been administered and discharged on May 31, 2023, although the Plaintiff had filed a caveat with the probate court requesting that she be informed of any actions or decisions of that court.

20. The Plaintiff had an expectation that she would inherit the bulk of Aunt Viola's estate and, together with her daughter, would share in the proceeds of Aunt Viola's insurance policies. The Plaintiff had previously noted that the insurance company had expressed concerns regarding these matters.

**21. Defendant Linda B. Mells convinced Aunt Viola that her home was about to be foreclosed and that individuals were coming to remove her. She repeated this same claim to the Plaintiff when the Plaintiff went to the home to inquire about Aunt Viola's whereabouts, as Aunt Viola herself was unable to explain where she was being taken. Defendant Mells used this false foreclosure claim to remove Aunt Viola from her home and place her in the Grand Villa facility. Defendant Mells, through fraud, deceit, threats, and intimidation, caused Aunt Viola to**

*8*

**bequeath her entire estate solely to the Defendant and to exclude the Plaintiff.**

*Defendant Mells further used fraud, deceit, threats, and intimidation to induce Aunt Viola to change her will and designate Defendant Mells as the sole beneficiary of the estate upon Aunt Viola's death.*

21. Defendant Mells' tortious and fraudulent behavior has caused the Plaintiff great distress and has damaged her to the extent that the Plaintiff has not received the benefit of her aunt's substantial estate. *Judge Campbell instructed Linda B. Mell to work with the Plaintiff to sell Aunt Viola's home. However, the Defendant, Linda B. Mell, allegedly received and retained the proceeds from the sale—approximately $120,000.00— even though Aunt Viola was still alive at the time.*

22. Plaintiff was further damaged, both emotionally and psychologically, because Defendant Mells' actions prevented the Plaintiff from carrying out the wishes of Aunt Viola to keep her home in the family. *Florida Statute §825.103 — Exploitation of an Elderly Person or Disabled Adult. This is the statute that makes it illegal for a caregiver to obtain, use, or attempt to obtain an elderly or disabled adult's property with intent to deprive them of it — including through gifts, bequests, wills, or any transfer of assets.*

**9**

23. Plaintiff has been damaged by Defendant Mells due to filing false criminal charges against the Plaintiff. As a result of the false allegations and statements made by Defendant Mells, including false and libelous statements that the Plaintiff abused her elderly aunt. Plaintiff lost her employment and had been basically homeless.

24. Plaintiff has been damaged by the Defendant Mells' conduct of fraudulently interfering with her expectancy because Plaintiff had given up her business to move into her aunt's home in Florida and with the promise and expectation from Aunt Viola that the Plaintiff would receive the proceeds from her aunt's estate which would make up for her lost revenue and business opportunities occasioned by the move.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT LINDA B, MELLS: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

25. Plaintiff realleges and avers Paragraphs 1 – 25 and states the following:

26. Defendant Mells knew and was aware of the close relationship between the Plaintiff and Aunt Viola, but intentionally prohibited the Plaintiff from communicating with or seeing her aunt, which caused the Plaintiff severe emotional distress.

27. Defendant Mells, by secreting Aunt Viola away and hiding her away from her family, engaged in outrageous conduct and likely hastened Aunt Viola to her death and denied the Plaintiff the opportunity to enjoy her aunt's

company. **Defendant Mells's conduct left the Plaintiff fearful, stressed, and deeply concerned that something terrible could happen to Aunt Viola if the Plaintiff continued to complain. During the hearing, Judge Pamela Campbell (dismissed Defendant Mells' bogus and libelous Complaint) told the Plaintiff, "NOT to bring Linda B. Mells back to court or things would not go well for you." As a result of this threat and the Grand Villa's refusal to allow the Plaintiff to visit, the Plaintiff no longer had any access to Aunt Viola, and she did not have a phone any longer.**

28. *Judge Campbell also ordered Defendant Mells to drop the Stalking Charge against me.*

29. Defendant Mells hid Aunt Viola away solely with the intent to steal from her and to usurp any influence from family members, including the Plaintiff, that would reveal Defendant Mells' unethical and potentially illegal conduct.

30. Defendant Mells' actions including seizing control over Aunt Viola's estate and reaping the benefits thereof, as well as prohibiting the Plaintiff from having contact with her aunt and egregiously denying the Plaintiff and family from attending Aunt Viola's funeral or viewing her body, or from requesting an autopsy due to the fact that Aunt Viola died under

11

Defendant Mells' supervision and what the Plaintiff considered as suspicious circumstances.

31. Defendant Mells' conduct, as well as so many other actions that are too numerous to mention here and so egregious as to cause the Plaintiff to suffer from post-traumatic stress disorder, anxiety, anger, and to the degree that the Plaintiff has been under the care of a medical professional in Clearwater, Florida to address the issues directly caused by Defendant's conduct.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT LINDA B. MELLS DEFAMATION/SLANDER PER SE

32. Plaintiff realleges and avers Paragraphs 1 – 30 and states:

33. Defendant Mells has communicated and published knowingly false and libelous statements about the Plaintiff to law enforcement, social workers, and others, accusing the Plaintiff of abusing Aunt Viola, which is a crime in the state of Florida, to wit: Defendant Mells told said officials and third parties that Plaintiff had physically and emotionally abused Viola Cain.

34. Said statements were made without authorization and without privilege and have caused damage to the Plaintiff's reputation and are such that said false statements, allegations, and charges have chilled the Plaintiff's desire to keep her Florida Private Investigator and Notary licenses and have hampered Plaintiff's ability to pass the various personal client

12

background investigations attendant to her profession. She was forced to resign and move back to Maryland.

35. Defendant Mells further knowingly made false and libelous statements to Plaintiff's late aunt, and before her passing, that the Plaintiff was abusing and/or taking advantage of Aunt Viola. <u>She also lied and said that the</u> <u>*Plaintiff had to be removed from the house by the police.*</u>

36. Defendant Mells made false and libelous statements to Aunt Viola, knowing of her diminished capacity and detachment, at times, from reality. Defendant Mells' statements were made to solidify her standing with Aunt Viola and to manipulate what a court previously determined to be a "vulnerable" person.

37. Defendant Mells' false statements have caused the Plaintiff to lose her good standing and good reputation in the community, and said statements have become part of a public record, for which damage to the Plaintiff's reputation has made it nearly impossible to recover.

38. The Plaintiff is a licensed private investigator in the State of Maryland. After moving back home, her license was renewed, and she remains in good standing. However, Defendant Mells' false statements severely damaged the Plaintiff's professional reputation and prevented her from seeking or obtaining employment as a private investigator, including with

agencies providing investigative services in Florida. When prospective employers searched the Plaintiff's name online, the defamatory statements made her appear to be an unviable applicant or business, directly interfering with her ability to work in her licensed profession.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT LINDA B. MELLS: FRAUD AND BREACH OF FIDUCIARY DUTY

39. Plaintiff realleges and avers paragraphs 1 – 38 as previously stated and states that:

40. Defendant Mells fraudulently and deceptively caused Viola Cain to appoint Mells as her fiduciary under Viola Cain's power of attorney, and although it has been alleged that such appointment was unauthorized and was revoked by Viola Cain, Mells nevertheless had a fiduciary duty to protect Viola Cain's financial assets from misuse, unnecessary expenditures, and from self-dealing and self-enrichment.

41. Defendant Mells breached her fiduciary duty by placing Viola Cain in an assisted living facility, for which Viola Cain was financially responsible for her care and treatment at the facility, while Defendant Mells continued to pay herself for the same services that she was hired to provide but were instead being provided by the assisted living facility.

42.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT LINDA B MELLS
## VIOLATION OF FLORIDA LAW SECTION 772.11

43. Plaintiff realleges and avers paragraphs 1 – 41 as previously stated and states that:

44. Defendant Mells, by her actions and including, but not limited to forcing the sale of Viola Cain's home and under the false premise that the home was facing foreclosure, retaining the proceeds of the sale for her own benefit and personal gain, by causing Viola Cain to name Defendant Mells as the sole beneficiary of Viola Cain's insurance policies, by misusing funds in excess of one hundred thousand dollars on deposit in Viola Cain's bank accounts and by maneuvering through deceptive practices that included threats, fear and intimidation against Viola Cain unless she granted Defendant Mells power of attorney and later, as the executor and sole beneficiary of Viola Cain's sizeable estate. Defendant Mells' actions and conduct were in direct violation of Florida law, notably Section 772.11, which prohibits the conduct alleged herein.

45. Defendant Mells conducted actions toward and against the now deceased Viola Cain, who was an elderly person at the time of Mells' actions causing harm and damage to the late Viola Cain, as well as harm to Viola Cain's heirs and natural descendants and deprived them of the financial

benefits Viola Cain had intended to provide for them, including the Plaintiff during her lifetime and upon her eventual death.

46. As a result of Defendant Mells' violations of Florida Law, the Plaintiff is entitled to recover actual damages, costs of this action, and treble damages against Defendant Mells.

## CLAIMS AGAINST GRANDVILLA, LLC AND LINDA B. MELLS
## NEGLIGENCE

47. Plaintiff realleges and avers Paragraphs 1 – 45 as previously stated and states that:

48. Defendant Grand Villa, LLC, is a limited liability company, registered in the state of Florida and licensed to provide health care and assisted living services.

49. On or about November 10, 2021, Viola Cain was removed from her home by Defendant Mells and was forced into the assisted living facility owned and operated by Defendant Grand Villa.

50. At the time of Viola Cain's unauthorized and fraudulent removal from her home and being forcibly placed into Defendant Grand Villa's facility, Defendant Mells had presented herself as Viola Cain's caregiver, hired by Viola Cain to provide for her care and assistance.

16

51. Plaintiff, upon information and belief, states that Defendant Mells presented herself to Defendant Grand Villa with a copy of the fraudulently procured power of attorney and represented herself as someone authorized to have Aunt Viola admitted into its assisted living facility. Given the nature of the short term relationship Aunt Viola had with Defendant Mells and the fact that Defendant Mells, as a licensed caregiver, was hired by Aunt Viola to provide the services subsequently provided by Defendant Grand Villa, it had a duty not to admit Aunt Viola into its facility and/or inquire of Defendant Mells how she, Mells, gain said authorization.

52. Plaintiff further asserts that Defendant Grand Villa, as a reasonable and prudent facility, experienced in providing the type of care it was contracted to provide Aunt Viola had a duty to report to the appropriate authorities the suspicious nature of Defendant Mells' acting as Aunt Viola's attorney in fact, especially given the fact that Aunt Viola had other family members, including the Plaintiff, that should have been informed about Defendant Mell's role, activities and interactions with Defendant Grand Villa.

53. Defendant Grand Villa breached its duty of care when it admitted Aunt Viola to its facility under Defendant Mells' suspicious and fraudulent

<u>**17**</u>

actions, when it was obvious that Defendant Mells was maintaining financial and personal control over a vulnerable person.

54. Even though Defendant Grand Villa was aware that Defendant Mells was to provide the services for Viola Cain that Mells was being paid to provide, Defendant Grand Villa nevertheless admitted Viola Cain as a resident in its facility and allegedly charged her $5000.00 per month for its services.

55. Plaintiff, upon information and belief, states that Defendants Mells and Grand Villa conspired and acted in concert to deplete and exhaust Viola Cain's bank accounts, as they charged her twice for essentially providing the same services.

56. Plaintiff, upon information and belief, states that Defendants Mells and Grand Villa conspired and acted in concert to deprive Viola Cain's family members of the opportunity to visit her and to see the type of care and treatment she was receiving by both Defendants Mells and Grand Villa.

57. Defendants Mells and Grand Villa, acting in concert, conspired to conceal from the Plaintiff that each was charging Viola Cain for the same services and thereby fraudulently billed Viola Cain for services that were either unnecessary or were to be performed and provided by Defendant Mells.

<u>**18**</u>

58. Defendants Mells and Grand Villa, acting in concert, conspired to conceal the negligent treatment and care provided to Viola Cain from the Plaintiff by denying the Plaintiff access to her aunt.

59. Defendants Mells and Grand Villa had a duty to provide for a reasonable standard of care in their treatment of Viola Cain. Defendants, however, breached their duty by forcing Viola Cain to sleep in a reclining chair.

60. Plaintiff's late aunt, Viola Cain, was a resident of Grand Villa at the time she suffered a fall while under the facility's care. Following this incident, she was transferred to Westminster in St. Petersburg, where she subsequently died on July 22, 2022, at 5:55 a.m.

61. Ms. Cain entrusted Grand Villa with her physical, emotional, and mental well-being.

62. Before and during her residency, Ms. Cain executed a legal **Notarized Power of Revocation,** clearly expressing her intent to revoke and modify her prior power of attorney and with the expressed intent to appoint the Plaintiff, Viola Russell, as her sole representative and as her attorney in fact, and to remove Defendant Linda B. Mells as power of attorney.

63. Plaintiff alleges that Grand Villa refused to accept, acknowledge, or honor Aunt Viola's revocation. A copy of the revocation was, however, mailed certified.

64. On November 13, 2017, Linda was informed by a police officer that her Power of Attorney meant nothing to him because Plaintiff held a valid Power of Revocation, and he spoke to Aunt Viola. When she did not get her way during that interaction, she retaliated four days later, on November 17, 2017, by filing two different bogus charges. As a direct result of her false statements and misconduct, the court revoked the Plaintiff's legal Power of Revocation on November 29, 2017. As a result of Linda's actions, Aunt Viola's legal rights were disregarded, and Plaintiff was denied access to her aunt, even after explaining that the bogus charges had been dismissed. Grand Villa still denied Plaintiff visitation, communication, and the ability to deliver personal items such as puzzles, Bibles, and books.

65. Plaintiff alleges that these actions caused additional emotional distress, family separation, and unnecessary legal complications.

66. Plaintiff further alleges that Grand Villa's legal counsel refused to comply with a subpoena duces tecum requesting facility records and video evidence. Plaintiff asserts that this refusal demonstrates obstruction and disregard for lawful process.

67. Plaintiff alleges that Grand Villa failed to supervise staff, including Deborah Cuatt, who prevented Plaintiff from contacting her aunt for

**20**

approximately nine months. Plaintiff asserts that these actions contributed to the unlawful isolation of a vulnerable adult.

68. Plaintiff asserts that this refusal demonstrates obstruction and disregard for lawful process.

69. Plaintiff alleges that Grand Villa failed to supervise staff, including **Deborah Cuatt Lewin**, *who prevented Plaintiff from contacting her aunt for approximately nine months.*

70. As a direct and proximate result, Plaintiff suffered harm, including emotional distress and loss of companionship.


## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

69 Plaintiff realleges paragraphs 1–68.

70. Grand Villa's conduct, including denying Plaintiff access to her aunt, ignoring legal documents, and isolating a vulnerable adult, was extreme and outrageous.

71. Grand Villa acted intentionally or with reckless disregard for the likelihood of causing severe emotional distress.

72. Plaintiff suffered severe emotional distress, humiliation, and mental anguish.

73.

21

## CLAIMS AGAINST DEBORAH CUATT-LEWIN AND GRAND VILLA

73. Plaintiff realleges paragraphs 1 – 72 and states:

74. On multiple occasions, Plaintiff contacted Grand Villa by telephone and left messages requesting that any staff member who objected to her visiting her ninety-seven year old aunt contact her directly. No one from Grand Villa returned Plaintiff's calls.

75. Plaintiff personally went to Grand Villa to visit her aunt. Upon arrival, Plaintiff was informed by staff member Deborah Cuatt-Lewin that she was not permitted to enter the facility and that, if she did not leave immediately, the police would be called. Plaintiff had several of her aunt's personal belongings, but the receptionist refused to accept them.

76. Plaintiff advised Ms. Cuatt that the prior case involving visitation allegations had been dismissed and that Plaintiff had never engaged in any misconduct. Plaintiff further explained that she had subpoenaed the facility's video footage, which Grand Villa failed to produce.

77. Grand Villa's refusal to return Plaintiff's calls, its continued denial of visitation, and its failure to acknowledge the dismissal of prior allegations constitute a continued and unlawful interference with Ms. Cain's and Plaintiff's

legal rights, including the right to revoke a power of attorney, the right to familial access, and the right to have valid legal documents honored pursuant to Florida **Statutes §§ 709.2109, 709.2114, and 709.2118**.

78. Grand Villa's continued refusal to allow Plaintiff to visit her aunt, despite Plaintiff's lawful rights and despite the dismissal of prior allegations, has caused Plaintiff additional emotional distress, humiliation, and further loss of familial companionship. ***I wrote to the Grand Villa's attorneys, Bob Bowen and Brad Bell, numerous times—far more than I care to mention.***

79. "Despite this, Grand Villa denied Plaintiff visitation, communication, and the ability to deliver personal items…"

80. "Grand Villa restricted Ms. Cain's ability to receive any visitors and communicate with any friends or family."

81. Plaintiff notified Grand Villa's attorney Bob Bowen that the withheld video evidence and the unprofessional, defamatory document filed on **November 29, 2021 (Document #139219599)** will be used in litigation.

83. Grand Villa's continued refusal to allow Plaintiff to visit her aunt, despite Plaintiff's lawful rights and despite the dismissal of prior allegations, has caused

**23**

Plaintiff additional emotional distress, humiliation, and further loss of familial companionship

84. Ms. Cain had the legal right to revoke her power of attorney under Florida law. Plaintiff had a legal right to visit and communicate with her aunt. Grand Villa knowingly interfered with these rights by refusing to honor the revocation and by restricting Plaintiff's access to Ms. Cain. ***The ex-parte hearing was conducted at the Grand Villa while Aunt Viola was being held upstairs. When Plaintiff attempted to speak, Judge Pamela Campbell immediately silenced her and issued a direct warning under color of law, stating that if Plaintiff brought Linda back to court, "it would not go well" for her. Judge Campbell further asserted that she was the only judge and that any future*** matter would return to her courtroom. ***These actions, taken jointly by Grand Villa and Judge Campbell while acting under color of state law, constitute a deprivation of Plaintiff's federally protected rights in violation of 42 U.S.C. § 1983. As a result of this threat, Plaintiff did not return to court until after her aunt had passed away.***

    1. Plaintiff suffered severe emotional harm and loss of familial companionship.

    2. Plaintiff also avers that she has legally recorded conversations with Aunt Viola before being illegally trespassed upon the property.

86. **F.S. 732.70** Restrictions on Caregivers Benefiting from Wills. This statute prevents caregivers or fiduciaries from witnessing or benefiting from a will they influenced or helped create, except under limited circumstances. Defendants' involvement in changes to Aunt Viola's estate documents may constitute a conflict of interest and may violate statutory protections designed to prevent undue influence over vulnerable adults

87. Grand Villa restricted Ms. Cain's ability to receive any visitors and communicate with any family members.

88. Plaintiff avers that the Defendant abused the authority granted under the Power of Attorney. Such abuse includes using the POA to remove family members without cause, withholding information regarding Aunt Viola's location or medical condition, making decisions contrary to Aunt Viola's clearly stated wishes, and using the POA for personal financial benefit. These actions may constitute a breach of fiduciary duty, exploitation of a vulnerable adult, and improper use of legal authority under Florida law.

89. These restrictions were based on invalid authority and false information. **The only reason I was able to see her before her passing was that Attorney Susan Helms, counsel for Linda B. Mells, and the attorney who rewrote the Will, contacted me and informed me that my Aunt Viola had suffered a fall while**

25

under the care and supervision of the facility. Attorney Helms further stated that I should go visit her, as she was no longer at the Grand Villa. She had been transferred to Westminster in St. Petersburg, where she later died on July 22, 2022, at 5:55 a.m.

90. *Her fall, her appearance, including matted, unkempt hair, dangerously long fingernails,* and the subsequent decline that followed, raise serious questions about the adequacy of the care, monitoring, and safety measures in place at your facility. When I finally saw her—after nine months without any contact—the first thing she said, in tears, was, 'Where have you been?' As I was leaving, she begged me not to forget about her."

## Facility Responsibilities

Grand Villa is directed to review its visitation policies and compare them with the requirements established by the **Agency for Health Care Administration (AHCA),** particularly as they relate to elderly residents such as my Aunt Viola. This review is especially warranted in light of AHCA's own published statement that **"The Agency for Health Care Administration is committed to ensuring families are able to visit their loved ones in Florida's licensed health care facilities."**

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for One Million Dollars ($1,000,000) in compensatory damages, Ten Million Dollars ($10,000,000) in punitive damages, and for all other relief deemed just and appropriate by this Court.

## JURY DEMAND

Plaintiff demands that all issues of fact be heard and decided by a jury charged with the responsibility to do so.

Viola Russell
violapeye@gmail.com
Pro se Plaintiff
240-838-9406

27